## Books, Administrator, *versus* Borough of Danville.

1. By the Act of April 26th 1855, the right of action in cases of death from injuries was conferred only upon parents for the loss of their children, and children for the loss of parents, and reciprocally upon husband and wife. The Constitution of 1873 declares that in cases of death resulting from injuries, " the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted." No legislation on the subject has been enacted since the adoption of this Constitution. *Held*, that the Act of 1855 is still the law, and that no right of action, under the constitutional provision, survives to the administrator of the deceased person.

2. No right of action for damages for death caused by negligence could exist in the deceased. It was given to and first existed in, the relatives entitled under the statute to sue therefor : Mann, *v.* Wieand, 4 W. N. C. 6, followed.

June 12th 1880. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Columbia county :* Of May Term 1880, No. 54.

[Books *v.* Borough of Danville.]

Case by Curtis S. Books, administrator of Charlotte Books, deceased, against the borough of Danville, to recover damages for the death of his wife, the said Charlotte Books, alleged to have been caused by the negligence of the defendant in allowing an abutment on a bridge on one of its public streets to be unguarded.

On the evening of the 27th of October 1878, which was very dark, the wife of the plaintiff, in returning from church to her home, missed the bridge and fell from the top of the unguarded part of the abutment into the canal below, and was drowned. The plaintiff took out letters of administration, and brought this suit in the Common Pleas of Montour county, to recover, as her administrator and for her estate, damages for the injury suffered by her by reason of the negligence of the defendant.   His action was founded upon the twenty-first section of the third article of the Constitution of 1873, which provides, " that no Act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property; and, in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted."   The venue was changed to Columbia county.   At the trial, and after the plaintiff had closed his evidence in chief, the counsel for the defendant moved the court to order a compulsory nonsuit.   It was not, however, contended that the plaintiff had not made out a prima facie case, if ·his suit had been brought in his own name, as husband of the deceased, under the provisions of the Act of 26th of April 1855, Pamph. L. 309, but that it appearing by his evidence that the deceased was his wife, he had proved too much, and had shown that he had no cause of action as administrator of the deceased.

The court, Elwell, P. J., granted the nonsuit, and afterwards refused to take it off, in an opinion, saying:

" The Acts of the 15th April 1851, and of the 26th April 1855, confer new rights unknown to the common law.   For injuries by unlawful violence or negligence, causing death, the former act gave a right of action to the widow of the deceased, and in case there be no widow, then to the personal representatives.   The Act of 1855 changed the law, so far as regards the personal representatives, and conferred the right of recovery only upon parents for the loss of children, and upon children for the loss of parents, and reciprocally upon husband and wife.   The right of action was given by the Act of 1851, and the Act of 1855 defines who may sue.   The damages are given, not to the estate of the deceased, but in express terms to specially enumerated relatives, as compensation for the pecuniary loss which they sustain by the death.

" Conceding this to be the correct construction of the Acts of Assembly, it is contended that the right of action is extended to personal representatives of the deceased by the twenty-first section

[Books *v.* Borough of Danville.]

of art. iii. of the Constitution of 1873. That section provides that in the case of 'death from injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted.' Since the adoption of the Constitution, no law has been passed upon this subject, for the reason, no doubt, that the legislature was satisfied with the law already in force.

"The Act of 1855, which gave a right of action to the relatives named, was continued in full force by the second section of the schedule to the Constitution. It provides that 'all laws in force in the Commonwealth at the time of the adoption of this Constitution, not inconsistent therewith, and all rights, actions, prosecutions and contracts shall continue as if this Constitution had not been adopted.'

"The provisions in the Constitution that the right of action shall survive, and that of the Act of 1855, that the relatives named shall have that right, are not inconsistent. The constitutional provision was for the purpose of preventing the passage of any laws by which the common law would be restored, and all right of action taken away. It declared that the right of action shall survive, but submitted to the law to say to whom. By continuing the former law in force, it, in effect, declared that no person but the husband, as such, shall maintain an action for injuries by negligence causing the death of his wife. As administrator he has no right of action. The nonsuit was, therefore, properly ordered. Motion to strike it off overruled."

The plaintiff then took this writ, and assigned this action of the court for error.

*Leander K. Mowrer, Charles R. Buckalew* and *Joshua W. Comly,* for plaintiff in error.—Our interpretation of the twenty-first section of art. iii. of the Constitution is that an action, for the cause of action therein declared to survive, can only be sustained by the executors or administrators of the deceased. The husband, doubtless, could also maintain his action in his own right under the Act of 1855, but the right of action declared by the Constitution to *survive* is a totally different right, namely, that which the deceased had in his lifetime for the injuries sustained, and which, when the injuries are followed by death, *survives* to his administrator.

What is this cause of action that is to survive? Undoubtedly it can only be the cause of action which the deceased had by the laws of this Commonwealth, at and immediately before his death, for no other person is mentioned as suffering injury or damage, or is mentioned at all. In fact no one is expressly mentioned, but the words "injuries to persons" and "in case of death from such injuries," necessarily imply a person suffering such injuries,

[Books *v.* Borough of Danville.]

and by reason of them succumbing to death, and it is his cause of action which the Constitution says shall not die with him, but shall survive. There certainly is no word in this section of the Constitution to lead the mind of the reader to the domestic relations of the deceased, or to the pecuniary damages for the injury resulting from his death to those relatives, to whom the Act of April 26th 1855 (Pamph. L. 309, Bright. Purd. Dig. 1094, pl. 3), gives an action for their recovery. Nor does the Constitution give expressly an action to recover damages for the death of the deceased, as did the 19th section of the Act of April 15th 1851, though we think that the intention clearly appears that the action shall survive to recover compensation for all that the deceased suffered or lost by means of the injury to his person.

*Actio personalis moritur cum persona* is the rule and maxim of the common law, and in case of the death of either the plaintiff or of the defendant, a personal action always abated. Where, however, the right of action arose *ex contractu*, it generally survived the death of either party, and whenever it did survive it always descended to the personal representatives of him who had it in his lifetime: 3 Bl. Com. 302. The purpose of the appointment of executors or administrators is that they may represent the deceased by enforcing the personal rights of action which he had in his lifetime, and in defending his estate against any claims that may be made against it. There is no reason why such rights should vest in any one else, and the law has always vested them in the personal representatives. Where the Constitution in this section, therefore, says, " the right of action shall survive," it vests the right in the personal representatives of the deceased.

Had the first sentence in this section of the Constitution ended with the words " the right of action shall survive," it is probable that no one would have thought of arguing or contending that the right of action thus surviving was not vested by the Constitution in the legal representatives of the deceased. But the sentence proceeds, saying, " and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted," and it was these latter words which the learned court below construed as authorizing the legislature to transfer the legal right of action from the legal representatives of the deceased to her surviving husband. The counsel for the plaintiff in error are unable to assent to this construction. These words have no relation to the legal parties or to the legal form of the action, but only to what might be recovered by it. The Constitution fixed the legal party, and authorized the legislature to designate the use party. There is a legal congruity in requiring that a right of action which survives the deceased, shall be prosecuted in the name of his legal representative, and it certainly cannot be said in Pennsylvania that there is any legal incongruity or impropriety in requiring an action to be brought in the

14 Norris—11

[Books *v*. Borough of Danville.]

name of a legal plaintiff for the use and benefit of another person. Besides this, there was strong reason why the Constitution should fix the parties, and give a complete and perfect right of action itself, inasmuch as the object and purpose of this section was to restrain and control the legislature, as otherwise this object and purpose would be defeated by the legislature simply by omitting the action required of them to perfect the right of action. The legislature, in fact, has not attempted to prescribe for whose use these actions shall be prosecuted. By the 19th section of the Act of April 15th 1851, Pamph. L. 674, Purd. Dig. 1093, a right of action was given in all cases of death occasioned by unlawful violence or negligence to the widow, or if there was no widow, to the personal representatives of the deceased, to recover damages for the death of deceased, and left it to the jury to place a money value on the life in the same manner as in other cases they estimate the value of health and reputation : Pennsylvania Railroad Co. *v*. McCloskey's Adm'r., 11 Harris 526. The Act of 1855 changed this, and substituted, as the measure of damage, the pecuniary loss suffered by the husband, wife, children or parents, plaintiffs in the action, or for whose use it was brought. This was an entire change of the cause of action, and in a suit under the Act of 1855, nothing can be recovered for any suffering borne or loss sustained by the deceased, but only for the pecuniary loss which his said surviving relatives may have sustained by reason of his death : Pennsylvania Railroad Co. *v*. Zebe, 9 Casey 318; Same *v*. Vandever, 12 Id. 298 ; Same *v*. Butler, 7 P. F. Smith 335, and Mansfield Coal & Coke Co. *v*. McEnery, 10 Norris 185. By these cases it is established that the cause of action, under the Act of 1855, is the pecuniary loss of the deceased's surviving family, but that cause of action which survives by the Constitution is for the suffering and loss which the deceased sustained in his lifetime and for which he could have recovered damages if he had lived to bring suit and obtain judgment. There is no resemblance between these two distinct causes of action. The difference is recognised and asserted in Pennsylvania Railroad Co. *v*. Henderson, 1 P. F. Smith 315. There is no conflict between the Constitution and the Act of 1855, they regard different rights, and if the act had been passed immediately after the adoption of the Constitution of 1873, instead of more than eighteen years before, it could, with no propriety or justice, be considered an execution of the power given to the legislature by the twenty-first section of the third article of the Constitution. It does not affect the Constitution, nor is it thereby affected. It was not unconstitutional when it was passed in 1855, and is not so now. Its vigor is unimpaired by the Constitution of 1873, and there are no provisions in the latter which can prevent the passage by the legislature of a supplement extending the provisions of the act to other relatives than those therein named, or to

[Books *v.* Borough of Danville.]

any other persons whatever. There is nothing to prevent the two actions, the one for the injury to the deceased, the other for the pecuniary loss sustained by the family of the deceased, from being maintained at the same time and both pursued to judgment and execution.

In view of the primary object and purpose of this section of the Constitution, it was a matter of minor importance whether the action was prosecuted for the benefit of the estate of the deceased or for that of his family. The recovery of the damages was but of secondary consideration of itself, and had its greatest importance in being a means to be used to effect the main purpose. If the main purpose had been to secure the recovery of the damages, surely the framers of this section, when they prohibited the legislature from limiting the amount to be recovered for injuries resulting in death, or for injuries to persons or property, would have given to the right of action for injury to property, and to that for injury to the person not resulting in death, the same power to survive that they have given to the right when the injury results in death. They would also have made these rights of action survive the death of the delinquent or offending party. But the chief purpose of this section was to protect the lives of all persons in the Commonwealth from destruction by any unlawful cause, and especially by negligence, by making such deaths expensive to those whose crimes or faults should occasion them; and these actions for damages for injuries resulting in death, are the means adopted to effect that purpose. The Act of April 15th 1851, was passed for the same purpose, and made nearly the same provisions. The members of the constitutional convention had seen this act in force for four years, and they and the people who adopted the Constitution seem to have considered its effects salutary. They also saw its provisions frittered away by the Act of April 26th 1855, and a further effort in that direction made by the Act of April 4th 1868 (Pamph. L. 58, Bright. Purd. Dig. 1094). This was supposed to have been done by the legislature under the influence of certain corporations, some one of which is generally the defendant in a suit brought for a cause of action of this kind. These corporations were certainly in the minds of the members of the constitutional convention, for they are mentioned in this very section, and the legislature is therein prohibited from favoring them with a special Statute of Limitations. The object being to fix permanently the law relating to these injuries and rights of action by a constitutional provision, which would be beyond the power of legislative meddling, it is absurd to suppose that the framers of this provision designed to empower the legislature, intended thereby to be restrained, to prevent its ever going into effect, simply, by omitting to do anything.

[Books *v.* Borough of Danville.]

*William J. Baldy* and *John G. Freeze*, for defendant in error. —When the constitutional convention assembled in 1873, and came to consider the article on legislation, and especially what is now the twenty- fifth section thereof, they found the statute law of the state on the subject embraced by it to be : that by the 18th section of the Act of April 15th 1851, Pamph. L. 674, the action for injuries to the person by negligence or default, should not abate by the death of the plaintiff, but that the personal representative might be substituted and prosecute the suit to final judgment and satisfaction—and in case of death occasioned by unlawful violence or negligence, and no suit brought by the injured party during his or her life, the widow, or if there be no widow, the personal representatives might maintain an action for damages.

Four years afterwards the subject was again brought to the attention of the legislature, and with the Act of 1851 in their minds, they changed the law, so as to restrict the right to recover damages, for any injury causing death, to the "husband, widow, children or parents" of the deceased, prescribed to whom the sum recovered should go, and required the declaration in the case to state who are the parties entitled to such action. Pamph. L. 1855, p. 309. Thus following, as Mr. Justice THOMPSON says in Pennsylvania Railroad Co. *v.* Adams, 5 P. F. Smith 499, the statute of 9 & 10 Vict. cap. 93, which provides, "that every such action shall be for the benefit of the wife, husband, parent and child."

Since the passage of the Act of 1855 there is no case by the personal representatives of the deceased; and that they could not sustain an action was settled by this court in The Pennsylvania Railroad Co. *v.* Zebe et ux., 9 Casey 318, saying, "The Act of the 26th of April 1855 changed the law so far as the personal representatives were concerned, and conferred the right of recovery only upon parents for the loss of children, and upon children for the loss of parents, and reciprocally upon husband and wife." And restating the law in stronger terms in the case of The Pennsylvania Railroad Co. *v.* Vandever, 12 Casey 298. And it is not denied that such was the proper construction of the statute.

The Act of 1855 also provided that the action should be brought within one year after the death, and not thereafter. Thirteen years afterwards the legislature had the subject again before them, and embodied their views in the Act of April 4th 1868, Pamph. L. 58, "relating to railroad companies and common carriers, defining their liabilities and authorizing them to provide means of indemnity against loss of life and personal injury." The first section of the . act limits the rule of liability of the company as to certain classes of persons ; and the second section limits the amount to be recovered either for personal injuries or loss of life, and defines the basis upon which such compensation for loss and damage shall be recovered.

. Now the whole of this legislation is embraced and covered by

the twenty-first section of art. iii. of the Constitution of 1873; and the first clause annuls and avoids the sentence limiting the amount of damage recoverable by the second section of the Act of 1868, but it does not otherwise interfere with it, either as to the basis of assessing the amount of damages to be recovered or as to the distinction between parties injured. The first part of the second clause, going back to the Act of 1851, declares that in case of death from such injuries the right of action shall survive; that is, that the legislature should be restrained from returning to the common-law rule, and taking away all right of action, as was said by the learned court below. The constitutional right is not additional to the one already existing, nor is that one enlarged. It is certainly not in the words of the instrument, nor if the section stood alone do we think it could be read in it by any natural and legal construction.

Mr. Justice GREEN delivered the opinion of the court, October 4th 1880.

The maxim *actio personalis moritur cum persona*, was abrogated in Pennsylvania in cases of injuries resulting in death, by legislation, prior to the adoption of the Constitution of 1873. The Act of 15th April 1851 gave a right of action for such injuries to the personal representatives of the deceased. The effect of that act was to make the damages recovered in such actions general assets of the deceased in the hands of the representatives, and of course they were available to creditors in the first instance. It followed that in all cases of insolvent estates of such deceased persons, where the victim of the injury was a husband and father, the widow and children derived little or no advantage from the action, although they were the persons most directly and severely injured. Hence it was that a change was made, and by a new act passed 26th April 1855, the right of action for such injuries was taken away from the personal representatives of the deceased, and conferred only upon parents for the loss of children, and children for the loss of parents, and reciprocally upon husband and wife. So far as this subject is concerned, this was the condition of the law in 1873, when the present Constitution was adopted. Of course as this right of action was derived from legislative enactment it might, in the same mode, be taken away. To prevent this being done a special provision was incorporated in the organic law, declaring that in cases of death resulting from injuries "the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted." Since the adoption of the Constitution no new legislation has been enacted on this subject. It is plain, therefore, that the Act of 1855 prescribing the persons "for whose benefit such actions shall be prosecuted," is still the law. No other persons have been clothed with the right, and hence no

[Books *v.* Borough of Danville.]

other persons can sustain such actions. The present action is brought by an administrator to recover damages for injuries resulting in the death of the intestate. But the legislature has not declared that such a person may maintain such an action, and hence the right to do so does not exist. The designation of the persons for whose benefit such actions shall be prosecuted is expressly referred to the action of the legislature by the language of the Constitution. No such law has been enacted, and hence the inference is irresistible that the persons who may now exercise that right are those, and those only, who could do so at the time of the adoption of the Constitution.

It is argued, however, that such a right exists in the personal representatives, because of the provision in the Constitution that " the right of action shall survive." The argument submitted in support of this provision is ingenious, but in our judgment it is entirely fallacious. The provision of the Constitution, coupled as it is, in the same sentence, with the direction that the legislature shall declare who shall exercise the right, would be conclusive that the right itself is a limited one, to be put in force only for certain persons to be prescribed by the legislative body. Hence the inference is not warranted that the right of action is a general one to exist independently of, or without, the appropriate legislation. This conclusion is much strengthened by another consideration of still greater force. The argument is, as it must be, that the personal representatives may recover for the injuries to the person of the deceased, and other persons may recover for the death. Unfortunately for that position, it is not the fact that two separate and independent rights of action are given. The language is, " and in case of death from such injuries the right of action shall survive," &c. What right of action? Manifestly the right to recover damages for the death of the person killed. No other cause of action is created. It is one right, not two, and its very existence, as a right of action at all, is absolutely dependent upon the fact of death. For the injuries preceding the death and independently of it, no right of action is given, and hence there is none to survive. The opposing argument *assumes* that it exists, and upon the basis of that assumption infers the survival. But the assumption is unwarranted, and, therefore, the inference can not be made. Moreover, it is too plain for argument that the deceased person never had, or could have, a right of action in advance of his death for damages resulting only from his death, and, therefore, again, as the right in him never existed, it could not survive to his representative. In the case of Mann *v.* Wieand, 4 W. N. C. 6, we held that, the right of action for damages from death by negligence never existed in the deceased ; that it was given to, and first existed, in the widow, and hence the defendant was a competent witness in his own behalf in an action against him by the widow. The

[Books v. Borough of Danville.]

same principle applies here.   We are of opinion that the nonsuit in the court below was properly entered.

Judgment affirmed.