## Gannon et al. v. Lawler

*McAdams, Eustace & McAdams,* for plaintiff.
*Oliver C. Riethmiller,* for defendant.

HEILIGMAN, J., March 20, 1939.—This is a suit in which plaintiff is suing in two capacities, namely, as widow of Michael J. Gannon and as administratrix of his estate, to recover for the damage sustained by her in both capacities by reason of the injury and the death of her husband. The death occurred on December 28, 1937, allegedly as the result of being struck by defendant's automobile on December 13, 1937. No suit of any kind was instituted by decedent against defendant.

An affidavit of defense in lieu of a demurrer was filed by defendant raising the question of whether plaintiff could sue and recover in both capacities. Defendant contends that plaintiff's sole right of action is as widow of decedent.

The basis for suit in either capacity is statutory. By the Act of April 15, 1851, P. L. 669, sec. 19, 12 PS §1601, the widow of a person dying as a result of unlawful violence or negligence was authorized to sue and recover damages for the death, and, in the absence of a widow, the personal representatives were so authorized, provided decedent had brought no suit for damages in his lifetime for the injury. Because that act made the damages recovered by personal representatives subject to claims of creditors, another act was passed in 1855

conferring the right of action on certain relatives of the deceased: Books, Admr., v. Borough of Danville, 95 Pa. 158, 165. The latter act was that of April 26, 1855, P. L. 309, and, as amended by the Act of June 7, 1911, P. L. 678, 12 PS §1602, enables the husband, widow, children, or parents of a decedent to recover the damages sustained by them as the result of the death provided no suit was brought by decedent in his lifetime. By the amendment of April 1, 1937, P. L. 196, 12 PS §1602, in the absence of the designated relatives, the personal representative may sue for medical and administration expenses. The Act of May 13, 1927, P. L. 992, 12 PS §1604, provides that the persons who are authorized to bring suit to recover damages for a death caused by unlawful violence or negligence may recover, in addition to the damages now recoverable in such actions, such expenses as could have been recovered in an action begun by decedent in his lifetime, and also the funeral expense, if plaintiff has paid or incurred such expenses.

The nature of the right given by the above-mentioned acts has been determined by the Supreme Court. In Kaczorowski v. Kalkosinski, Admr., 321 Pa. 438, 441, the court said this right was *an explicit and independent right of action to recover the damages peculiarly suffered by the parties named therein*; the right is derived from "the tortious act and not from the person of the deceased" (p. 440). Therefore any disability which "inheres" in the tort itself is available as a defense against plaintiffs, but any disability which was personal to decedent is not available as a defense against plaintiffs mentioned in the statute. By the terms of the statute, however, the action apparently "derives" from decedent to the extent that if decedent brings suit in his lifetime the surviving relatives lose their right of action.

It thus appears that in cases where decedent did not bring suit in his lifetime for his personal injuries, the personal representative of decedent had no right of action;

the only right of action was in the relatives. The 1937 amendment to the Act of 1855, however, gave to the personal representative the right to recover certain expenses if no relatives survived.

The damages which may be recovered by the specified relatives have been carefully defined by decisions which are summarized in Gaydos et al. v. Domabyl, 301 Pa. 523. Damages are limited to the actual pecuniary loss which the relatives may reasonably expect to suffer because of the death. The historical reasons for this measure of damages are set forth in Pa. R. R. Co. v. McCloskey's Admr., 23 Pa. 526, 529.

Article III, sec. 21, of the Pennsylvania Constitution provides that the legislature shall not "limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted."

The right of action referred to is that to recover damages for the death of the person killed, and the legislature may declare who shall maintain such action: Books, Admr., v. Borough of Danville, supra. The court there said that only one right of action was created, and for injuries preceding the death and independently of it no right of action is given. There is nothing in the opinion, however, to indicate that the legislature could not create the latter right of action; the point was that the legislature had not created such right.

In addition to the Acts of 1851 and 1855, supra, there was also in effect, at the time of the adoption of the Constitution of 1873, section 28 of the Act of February 24, 1834, P. L. 73, which provided that executors or administrators may commence and prosecute all personal actions which the decedent whom they represent might have commenced and prosecuted, except actions for slander, for libels, and for wrongs done to the person. The commis-

sioners of 1830 reported that the cases of slander, libel, and wrongs done to the person had "always been excepted here and in England, because being derived mainly from personal considerations, it has been supposed to be against the policy of the law to encourage their transmission to or against the representatives of the deceased party." The commissioners of 1915 included the substance of section 28 of the Act of 1834, supra, in section 35(b) of the Fiduciaries Act of June 7, 1917, P. L. 447, omitting the exception of wrongs done to the person with the explanation that "These words were eliminated by the Acts of 1851 and 1895. . . . The Acts of 1851 and 1895 were intended to amend the Act of 1834 so as to eliminate the words 'for wrongs done to the person.'" The Act of June 24, 1895, P. L. 236, related to suits against deceased wrongdoers. See Moe v. Smiley, 125 Pa. 136.

In Strain, Admr., v. Kern, 277 Pa. 209, the administrator of a decedent who had died of injuries caused by defendant brought suit against defendant to recover damages for the injuries and death. Plaintiff conceded that the only basis for the suit was section 35(b) of the Fiduciaries Act. The court decided that, if section 35(b) authorized such suits, it was unconstitutional because this fact was not clearly expressed in the title. The court, however, expressed the opinion that section 35(b) did authorize such suits, which is what the commissioners of 1915 state they intended when they drafted that section of the Fiduciaries Act.

In 1937 the legislature amended the title of the Fiduciaries Act to meet the objection raised in Strain, Admr., v. Kern, supra, and reënacted section 35(b) (Act of July 2, 1937, P. L. 2755, 20 PS §772). Executors and administrators are therefore empowered to bring any suit which their decedent might have brought in his lifetime, except for libel and slander. As stated above, there appears to be no constitutional limitation of the power of the legislature to authorize such suits or to increase or decrease the list of beneficiaries of such actions.

The present statutory law seems to be, therefore, that if no suit is brought by one who dies of injuries sustained through negligence of another, the relatives of decedent may sue the wrongdoer for the pecuniary loss which the death caused them and the personal representatives of decedent may sue defendant upon whatever cause of action decedent might have sued in his lifetime.

In some instances it requires no argument to show that section 35($b$) filled a need which the Acts of 1851 and 1855 did not supply. Where decedent left no relatives and brought no suit in his lifetime, there was no one who could sue the wrongdoer prior to the amendment of 1937, supra (providing for the recovery of expenses by the personal representative). If decedent left relatives but died of a cause other than the injury, without bringing suit, the wrongdoer was liable to no one. See Pa. R. R. Co. v. McCloskey's Admr., supra.

In cases, however, where the specified relatives survive, and no action is brought by decedent in his lifetime, the newly-enacted section 35($b$) removes the wrongdoer from his favorable position and places him in one where his potential liability is increased manyfold. He is now subject to suits from two sources. To the relatives of decedent, the wrongdoer must respond in damages to the extent of their pecuniary loss; to the personal representative, he must respond to the extent of damages suffered by decedent. The measure of damages for the relatives is well settled, as already stated in this opinion, and should remain the same, but the items of damage which may now be recovered by the personal representative should be given careful consideration by the courts.

The legislature intended the relatives to have a cause of action only if decedent did not bring suit in his lifetime, so that if suit under section 35($b$) is considered to be identical in all respects with the action that decedent could have brought but did not—a nunc pro tunc action, so to speak—a serious question might arise as to whether the personal representative's suit might not deprive the

relatives of their right of action. Our conclusion is that the suit by the personal representative is not in all respects identical with the action decedent might have brought. Two actions may now be brought against one defendant, and since the action by the personal representative is new and dissimilar from any other action, the measure of damages need not necessarily be the same as that used in cases where decedent has started suit in his lifetime.

This conclusion is impelled by the fact that if the same measure of damages were used in a suit under section 35(b) as is used in cases where decedent began suit in his lifetime, the damages which the personal representative could recover would overlap those which the relatives could recover. This is so because in decedent's suit recovery could be had for the diminution of earning power during a period of life which decedent would have probably lived had the accident not happened: Maher, Admr., v. P. R. T. Co., 181 Pa. 391. If the personal representative in a suit under section 35(b) recovered such damages, and the relatives also recovered for their anticipated share of decedent's earnings for the same period, defendant would be subjected to overlapping damage claims.

This danger is the present defendant's principal complaint. Because section 35(b) would thus infringe on the field covered by the Acts of 1851 and 1855, which embody rights guaranteed by the Constitution, defendant says section 35(b) is still unconstitutional. As we intend to limit the measure of damages to prevent the overlapping, this objection falls.

Defendant also contends that under Maher, Admr., v. P. R. T. Co., supra, at page 398, and McCafferty, Admr., v. Pa. R. R. Co., 193 Pa. 339, 346, the overlapping must occur in absence of legislative authority to the contrary.

In both the Maher and the McCafferty case, the injured party brought suit in his or her lifetime, and under section 18 of the Act of 1851, supra, the personal representative had been substituted (section 19 of the Act of

1851 is the section relating to suits where decedent brought no action in his lifetime). In the McCafferty case, the court said (p. 345):

"*Under these acts* [italics supplied] two actions cannot be sustained for the same injury. If the party injured has brought an action and died it may be continued by his executor or administrator for the benefit of his estate, but in such a case no new action can be brought under section 19. If he has not brought an action, the parties designated by the act of 1855 may do so, and the recovery is in their right . . .".

The court was construing the Acts of 1851 and 1855, under which there is no authority for concurrent rights of action, but section 35(*b*) authorizes a concurrent action. Likewise, when the court stated (p. 398) in the Maher case that the measure of damages in a case where the personal representative had been *substituted* includes "diminution of earning power during a period of life which she would have probably lived had the accident not happened," the court was not contemplating the situation where a surviving relative might concurrently bring suit and recover also the part of the diminished earnings which such relative might have received had decedent lived. Consequently, there is no rule as yet as to the measure of damages in a suit of this kind. Until the legislature codifies the existing law or until the appellate courts rule otherwise, both actions authorized by the statutes should be permitted but the measure of damages adjusted to prevent injustice to defendant.

In general, the personal representative, in a suit brought by virtue of section 35(*b*) for injuries to his decedent, should recover the items of damage for which the wrongdoer is responsible and for which the relatives cannot recover, eliminating those items for which decedent himself could not have recovered. In respect to items for which both the personal representative and the relatives are in a position to recover, an arbitrary division will have to be made, for double recovery for the same item

of damage should not be permitted. In Gaydos et al. v. Domabyl, supra, at page 531, the court enumerated the items of damage for which the relatives usually cannot recover. Using that enumeration as a guide, we determine the measure of damages for the personal representative to be as follows:

(a) Medical, nursing, hospital, funeral, and similar expenses should be awarded to the party who paid them or who is primarily liable for them. The amendment of 1927, enacted at a time when the personal representative had no action, enables the relatives specified in the Act of 1855 to recover these expenses. Now that there are concurrent actions in both the relatives and the personal representative, these expenses cannot be recovered twice. Where the relatives have paid the expenses or, if unpaid, are primarily liable for them, as a husband is whose wife has been injured or killed, the relatives should recover; where the decedent's estate is primarily liable, the personal representative should recover, unless the bills have been actually paid by the relatives.

(b) The personal representative should recover for the physical pain, mental distress, loss of time, and loss of earning power caused by the injury for the fixed period between the injury and the death. This limitation of recovery for loss of earnings to the date of death, rather than for the entire probable period that decedent would have lived if the injuries had not been sustained, is in accordance with the trend of a majority of decisions on this point, most of which are collected in the Dickinson Law Review for January 1939. Differences in the statutes involved in other jurisdictions do not make the decisions there precisely comparable to one another or to our situation, but the general trend in these other jurisdictions is to limit the recovery of the personal representative to damages up to and at the death of decedent.

The criticism which can be made of this view is well expressed in Lutge, Admx., v. Rosin et al., 32 D. & C. 338,

344: "To contend that some distinction should be made between the damages that the personal representative may recover where the *action* survives to him and where the *cause of action* survives to him . . . is to ignore the essential difference between the Death Act and the Survival Statute."

In our opinion, this overlooks the fact that in the first case defendant is not faced with two suits, in the latter case, he is, and we feel that justice to defendant requires a distinction to be made. It is to be noted also that plaintiff here, although citing Lutge, Admx., v. Rosin et al., supra, would allow the damages recovered by the personal representative for future earnings to be diminished by the amount recovered by the relatives for their share of future earnings.

(c) The mental suffering, grief, or distress of mind (as distinguished from that arising from his own injury) are not items for which decedent himself could have recovered: Stone v. C. I. T. Corp., 122 Pa. Superior Ct. 71, 78; and hence the personal representative cannot recover them.

(d) The same is true of loss of companionship or society. Decedent could not have recovered these items for himself, and so the personal representative should not recover them.

It is possible that this item will have to be reconsidered when a case arises in which a wife is suing for injuries to herself and in which the personal representative of the husband, who has died between the date of the injury to his wife and the institution of suit, has joined under section 35(b). If such a suit is possible, then the personal representative may be able to recover for loss of companionship and society of the wife. In an ordinary suit of that kind these items are recoverable by the husband: Platz v. McKean Twp. et al., 178 Pa. 601; Reagan v. Harlan, 24 Pa. Superior Ct. 27.

(e) The value of decedent's life as such or as property, as property is generally known, is not an item of

damage to the relatives: Gaydos et al. v. Domabyl, supra, at page 538. Decedent's life is of value to his creditors, at least, but the only measure of the monetary value of a human life is what the life would have produced in money if it had not terminated in death. This is another way of stating loss of earning power. In our opinion, damages for the economic value of a life and for loss of earning power are the same. In McCafferty, Admr., v. Pa. R. R. Co., supra, at page 346, it is indicated that the value of a life is the value of the advantages of which decedent (or his creditors) was deprived by the loss of earning power due to the injury and death. As we have decided the question of loss of earning power, we eliminate the term "value of decedent's life" from the measure of damage for the personal representative.

Thus, defendant, although faced with two suits, is not subjected to greater claims for damage than he would be if the injured person had not died, but had sued for permanent and disabling injuries. In fact the damages are somewhat less, in view of the elimination of the claim for loss of earning power beyond the date of death in the suit by the personal representative under section 35(b). The trial judge can, by his charge, keep the jury within the proper limits of damage for each plaintiff, whether the cases are tried together or separately. In cases like the present, where plaintiff sues in two capacities, the instructions to the jury would be similar to those in suits of parent and child for injury to the child, or husband and wife for injury to the wife.

The authority for joining the two causes of action is the Act of June 25, 1937, P. L. 2072, which permits, inter alia, parties who have a right of action severally in respect to the same transaction involving a common question of law or fact to join as plaintiffs in one civil action. This changes the law: Weil v. Townsend, 25 Pa. Superior Ct. 638; but in this instance at least it is a practical change. The "one transaction" is, of course, the accident in which decedent was injured, and the common question

of fact is how the accident happened: Karcher et ux. v. Downes, 31 D. & C. 386, 388.

The other questions raised by the affidavit of defense relate to the form of the statement of claim. These objections should be raised by motions to strike out or for a more specific statement and will not be here considered.

It is, therefore, adjudged that plaintiff's statement of claim sets forth in proper form a valid cause of action. Leave is given to defendant to file an affidavit of defense within 15 days.