Maria Martina Deni, by her attorney in fact, Palmo Deni, Appellant, *v.* The Pennsylvania Railroad Company.

*Negligence—Death—Family relation—Mother and son.*

In an action by a mother to recover damages for the death of an adult son, the burden of proof is upon her to show the existence in fact of a family relationship which entitles her to maintain a suit for the death of her son.

*Negligence—Death—Act of April 26, 1855—Nonresident alien.*

Under the Act of April 26, 1855, P. L. 309, which gives a right to recover damages for an injury causing death, a nonresident alien mother has no standing to maintain an action against a citizen of Pennsylvania to recover damages for the death of her son.

Argued March 31, 1897.   Appeal, No. 70, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1895, No. 121, refusing to set aside nonsuit.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Trespass for death of plaintiff's son.

The facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Francis H. Thole*, for appellant.—The plaintiff is of a class whose rights to recover damages is specifically mentioned in the Act of April 26, 1855, P. L. 309 : Addison on Torts, 604.

As was said in Penna. R. Co. v. Adams, 55 Pa. 499, the English statute of 1846 " differs only in form of expression " from the Pennsylvania act; the decisions thereunder will by analogy guide in a construction and application of the Pennsylvania statute : Franklin v. Southeastern Ry. Co., 3 H. & N. 211; Dalton v. Southeastern Ry. Co., 4 C. B. N. S. 296; Hetherington v. Northeastern Ry. Co., L. R. 9 Q. B. D. 160.

The plaintiff showed the family relation, that the deceased was her child, and gave her a standing in court as one of the parties named in the act of April 26, 1855 : Lehigh Iron Co. v. Rupp, 100 Pa. 95.

No legal obligation or duty of the son to support his mother is requisite to sustain the action by the mother for damages for the death of her son : Illinois Cent. R. R. v. Barron, 5 Wallace, 90; Penna. R. Co. v. Keller, 67 Pa. 300; Schnatz v. Phila. & Reading R. R., 160 Pa. 602.

The alienage or want of citizenship of the plaintiff does not militate against her, and deny to her the right to sue here, where the subject-matter of the action arises : Hughes v. Edwards, 9 Wheaton, 490; Craig v. Leslie, 3 Wheaton, 563; Taylor v. Carpenter, 2 Woodbury & Minot's Rep. 1; Knight v. West Jersey R. R., 108 Pa. 250.

*David W. Sellers*, for appellee.—The legislation of a state is for its own citizens. Its benefits are for them because only on them are its burdens imposed. Those outside of its political jurisdiction cannot be affected by it.

It is by reason of the assumption of loss of support by death, legally or voluntarily due, that this court has interpreted the act of 1855, not to apply where the family relation has been dissolved to the extent of actual separation : Iron Co. v. Rupp, 100 Pa. 95 (1882), and it is in the same line to hold that an alien mother, from whom a son over thirty has gone to a new political domicile, is confronted with a disruption and separation of the family relation which places her outside of the legislation of this state.

OPINION BY MR. JUSTICE McCOLLUM, May 27, 1897:

Stephen Deni came to this country in 1889, and he was then twenty-seven years old. While employed by the defendant company as a laborer on its roadbed or track, he was on October 28, 1894, killed in a collision which was imputed to the negligence of his employer. It is claimed that inasmuch as his day's work was done and he was in the company's car for the purpose of riding in it to his boarding place, he was a passenger and not an employee of the company when the collision occurred. For the purposes of this case he may be considered as a passenger at the moment he was killed. While in this country his wages never exceeded $1.20 a day, and this sum represented ten hours' work. From his wages he had to pay for his board, washing and clothing. Assuming that he worked on full time, and on every week day of the year, the balance, after paying the necessary expenses of his own maintenance, was not large. The claim that he regularly remitted money to and for the maintenance of his mother in Italy was not supported by convincing or satisfactory evidence. His cousin, Ferdinand Deni, testified that Stephen told him, on September 20, 1894, he had sent his mother $20.00. Joseph Narcitto testified that in August of that year Stephen told him he had $20.00 and " wanted to borrow another $20.00 so as to send it to his mother." These were the only witnesses who testified in regard to a specific or particular remittance, and it clearly appears from their testimony that their information respecting it was based on what Stephen said to them. Ferdinand Deni and Palmo Deni, a brother of Stephen, testified in general terms that Stephen sent money to his mother. But it is noticeable that neither of them testified to having seen Stephen make at any time a remittance to her in any form. Ferdinand said " the attorney has the receipts from the bank that the money was sent to Italy " and that Carlo Barsotti was the banker through whom it was sent. The receipts were not produced, nor the banker called to testify, although his place of business was but a few squares from the place of trial. The plaintiff knew whether Stephen contributed to her support, and she was competent to testify in her own behalf. But her testimony was not obtained, nor does it appear that any effort was made to

obtain it. Of course Stephen's declarations were not competent evidence of contributions by him to her maintenance.

Stephen Deni did not see his mother after he left her in Italy in 1889. She still resides in her native country, and owes allegiance to the government of it. The burden was on her to show the existence in fact of a family relationship which entitled her to maintain the suit. In view of these facts and the evidence in the case the learned court below thought she could not recover, and accordingly entered a compulsory nonsuit.

No case has been cited to us, nor are we aware of any, in which a nonresident alien, whether husband, widow, child or parent of the deceased, has maintained a suit, under the Act of April 26, 1855, P. L. 309, to recover damages for an injury causing death. Our legislation on this subject is in accord with the English statute of August 26, 1846, and, therefore, the decisions of the English courts construing this statute are often referred to in cases grounded upon our acts of April 15, 1851, and April 26, 1855. But no case has been brought to our notice in which an English court has held that a nonresident alien is entitled to the benefits conferred by the act of 1846. The same may be said of the decisions of the courts of our sister states having statutes similar to our own. May a citizen of the United States whose son while traveling in England is killed in a collision on an English railway, through the negligence of the owners or operators of it, maintain an action in an English court under and by virtue of the English statute we have referred to? If he cannot it is because the statute does not include a nonresident alien. As the English statute is like ours there would seem to be more reason for allowing a suit to be maintained under it by a citizen of this country than by a citizen of a country which has no such statute. Presumably if the death of the plaintiff's son occurred in her own country, as it did here, she could not maintain a suit for the loss she sustained by it, and if the death of a son of a citizen of this country occurred there under like circumstances, the latter could not maintain a suit for the loss he suffered by it. No statute or law of Italy has been shown which authorizes such a suit.

Our statute was not intended to confer upon nonresident aliens rights of action not conceded to them or to us by their own country, or to put burdens on our own citizens to be dis-

charged for their benefit. It has no extraterritorial force, and the plaintiff is not within the purview of it. While it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it. A nonresident defendant is not entitled to the benefit of our exemption laws, although the language of these laws may admit of a construction which would include him. It has been so held in a number of our cases. In this connection the language of Mr. Justice STERRETT, in Collom's Appeal, 2 Pennypacker, 130, is pertinent. In delivering the opinion of the court he said: "While non-resident debtors may perhaps be within the letter of the act we do not think they are within its spirit. As was said by Mr. Justice WOODWARD in Yelverton v. Burton, 2 Casey, 351, and afterwards quoted approvingly by the present Chief Justice in McCarthy's Appeal, 18 P. F. Smith, 217, we do not legislate for men beyond our jurisdiction." In one respect, at least, our act of 1855 resembles our exemption laws. It is intended, primarily, for the benefit of the family of which the deceased was a member. The act of 1851 gave a right of action to the personal representatives of the deceased. Mr. Justice GREEN referred to this act in Books v. Borough of Danville, 95 Pa. 158, and said: "The effect of this act was to make the damages recoverable in such actions general assets of the deceased in the hands of the personal representatives, and of course they were available to creditors in the first instance. It follows that in all cases of insolvent estates of such deceased persons, where the victim of the injury was the husband and father, the widow and children derived little or no advantage from the action, although they were the persons most directly and severely injured." But this objection to the act of 1851 was overcome by the act of 1855 which designated the persons to receive the sum recovered, and directed that they should take it in the proportion they would take the personal estate of the deceased, in case of intestacy, "and that without liability to creditors." In Bacon v. Horne, 123 Pa. 452, it was held that the Act of May 3, 1855, P. L. 415, relating to the recording of an assignment made for the benefit of creditors by a resident of another state,

which assignment included property of the assignor in this state, was for the protection of our own citizens, and that a creditor of the assignor who was a resident of the state in which the assignment was made could derive no benefit or protection from the act, although he was without notice of the assignment. There is nothing on the face of the act which limits the protection afforded by it to our own citizens. It is referred to as another illustration of the general rule that we do not legislate for persons beyond our jurisdiction.

We have a number of statutes which expressly confer rights upon aliens, but none which confers them by implication or inference. When the legislature intends to concede to non-resident aliens the rights which our own citizens have under and by virtue of the act of April 26, 1855, it will say so.

Our conclusion is that the learned court below did not err in entering the nonsuit.

Judgment affirmed.