ZEIGER v. PENNSYLVANIA R. CO.

(Circuit Court, W. D. Pennsylvania.   March 6, 1907.)

1. COURTS—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS CONSTRUING STATUTES.

A construction placed upon a state statute by the highest judicial tribunal of the state which has been adhered to without variation, and has become the settled law of the state is as binding on the federal courts as though it were written into the statute itself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 957.

State laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71, Hill v. Hite, 29 C. C. A. 553.]

2. DEATH—ACTION FOR WRONGFUL DEATH—RIGHT OF ACTION UNDER PENNSYLVANIA STATUTE.

Under the settled construction placed by the Supreme Court of Pennsylvania upon the act of 1851 giving a right of action for wrongful death, as amended by Act April 26, 1855 (P. L. 309), giving such right of recovery to the next of kin of the deceased, such statute does not confer a right of action on a nonresident alien.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 35, 37, 47.]

At Law.   On demurrer to declaration.

Weil and Thorp, for plaintiff.

Patterson, Sterrett & Acheson, for defendant.

EWING, District Judge.   The plaintiff is a citizen and resident of the city of Zenta, Kingdom of Hungary, and in this action seeks to recover damages by virtue of the provisions of the acts of 1851 and 1855 of this commonwealth, for the death of his son, George Zeiger, late a resident of Pittsburgh, Pa., which was occasioned by a collision while the said decedent was a passenger on a train of the defendant company en route from New York to Pittsburgh.   The train in which the said George Zeiger was a passenger collided with another train of cars of the defendant company at or near Harrisburg, Pa., early on the morning of May 11, 1905, and in that collision the said George Zeiger was so badly injured that he died about 11 o'clock that morning in the Harrisburg Hospital where he had been taken.   The said George Zeiger was unmarried, and the plaintiff is his sole living parent, and the only person entitled to recover under the acts aforesaid.   The declaration also alleges that the decedent devoted a large part of his earnings to the support and maintenance of the plaintiff, and for years has been, and at the time of his death was, his sole support.

The defendant company has filed a demurrer and assigned in support thereof the following reasons:   (1) That the plaintiff is and was at the time of the accident complained of a nonresident alien parent.   (2) That plaintiff's son, George Zeiger, was at the time of the accident complained of, a resident of the state of Pennsylvania.

The case was argued on this demurrer, and the pivotal point is whether or not the plaintiff, being a nonresident alien, can maintain this action under the provisions of the statutes of this state above referred to and the decision thereon of the Supreme Court of this State in Deni v. Pennsylvania Railroad Company, 181 Pa. 525, 37 Atl.

558, 59 Am. St. Rep. 676, and Maiorano v. Baltimore & Ohio Railroad Company (decided January 7, 1907) 216 Pa. 402, 65 Atl. 1077; the contention of the plaintiff being that, notwithstanding these decisions of the Supreme Court of this state, the courts of the United States are at liberty to determine the question for themselves, and are not concluded by those decisions. I have examined with great care the very extensive and excellent brief furnished by counsel for plaintiff, and feel constrained to hold that the decisions of the Supreme Court of this state upon the statutes aforesaid are binding and conclusive upon the courts of the United States. At common law, the plaintiff had no right of action, nor any one else, for the death of George Zeiger, and it is only by virtue of the purely local statutes aforesaid that any right of action is conferred. In construing those statutes the Supreme Court of this state in Deni v. Railroad Company, supra, after full deliberation and consideration has decided that:

"Our statute was not intended to confer upon nonresident aliens rights of action not conceded to them or to us by their own country, or to put burdens on our own citizens to be discharged for their benefit. It has not extraterritorial force, and the plaintiff is not within the purview of it. While it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children, and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it. A nonresident defendant is not entitled to the benefit of our exemption laws, although the language of these laws may admit of a construction which would include him. It has been so held in a number of our cases. In this connection the language of Mr. Justice Sterritt, in Collum's Appeal, 2 Penny. (Pa.) 130, is pertinent. In delivering the opinion of the court, he said: 'While nonresident debtors may perhaps be within the letter of the act we do not think they are within its spirit. As was said by Mr. Justice Woodward in Yelverton v. Burton, 2 Casey (Pa.) 351, and afterwards quoted approvingly by the present Chief Justice in McCarthy's Appeal, 18 P. F. Smith, 217, we do not legislate for men beyond our jurisdiction.' In one respect at least, our act of 1885, resembles our exemption laws. It is intended, primarily, for the benefit of the family of which the deceased was a member. The act of 1851, gave a right of action to the personal representatives of the deceased. Mr. Justice Green referred to this act in Books v. Borough of Danville, 95 Pa. 158, and said: 'The effect of this act was to make the damages recoverable in such actions general assets of the deceased in the hands of the personal representatives, and, of course, they were available to creditors in the first instance. It follows that in all cases of insolvent estates of such deceased persons, where the victim of the injury was the husband and father, the widow and children derived little or no advantage from the action, although they were the persons most directly and severely injured.' But this objection to the act of 1851 was overcome by the act of 1855, which designated the persons to receive the sum recovered, and directed that they should take it in the proportion they would take the personal estate of the deceased, in case of intestacy, 'and that without liability to creditors.' In Bacon v. Horne, 123 Pa. 452, 16 Atl. 794, 2 L. R. A. 355, it was held that the act of May 3, 1855 (P. L. 415), relating to the recording of an assignment made for the benefit of creditors by a resident of another state, which assignment included property of the assignor in this state, was for the protection of our own citizens, and that a creditor of the assignor who was a resident of the state in which the assignment was made could derive no benefit or protection from the act, although he was without notice of the assignment. There is nothing on the face of the act which limits the protection afforded by it to our own citizens. It is referred to as another illustration of the general rule that we do not legislate for persons beyond our jurisdiction. We have a num-

ber of statutes which expressly confer rights upon aliens, but none which confers them by implication or inference. When the Legislature intends to concede to nonresident aliens the rights which our own citizens have under and by virtue of the act of April 26, 1855 (P. L. 309), it will say so."

This case was decided May 27, 1897, and has been the settled law of this state ever since and is reaffirmed in the case of Maiorano v. Baltimore & Ohio R. R. Co., supra. It will be noted that in the opinion of the court the decision is stated to be in line with the settled policy of this state, respecting legislation as affecting nonresident aliens, so that, since the first of the cases along that line cited in the opinion to the present time, it may be taken as settled that in the absence of some express provision to the contrary, or the character of the legislation be such as to absolutely demand it, our statutes are to be construed as providing for and affecting only those in the territorial jurisdiction of the state.

The Thirty-fourth section of the judiciary act of 1789 declares that:

"The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in courts of the United States, in cases where they apply." Act Sept. 24, 1789, c. 20, 1 Stat. 92.

And this has been uniformly interpreted by the courts of the United States to apply to the positive statutes of the state and the construction thereof adopted by the local tribunals.

In Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 15, 27 L. Ed. 359, Mr. Justice Bradley, in delivering the opinion says:

"The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state Constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is."

This appears to be a fair and full declaration of the attitude of the United States courts towards the decisions of the state courts and to be fully recognized and acted upon at this date. The cases cited by plaintiff's counsel as authority for his contention that this court is not concluded by the decisions of the Supreme Court of Pennsylvania on the statutes aforesaid are all easily distinguishable from this case and do not authorize this court to disregard those decisions of the state court.

Burgess v. Seligman, supra; Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517, and Stanley County v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126, are all cases where the question involved had either been decided by the United States courts prior to any decision by the state courts, or where the decisions of the United States courts were upon the very controversies upon which

the state court had rendered their decisions, and in which the law had not been definitely settled.

Gibson v. Lyon, 115 U. S. 139, 6 Sup. Ct. 129, 29 L. Ed. 440, and Barber v. Pittsburgh, etc., Railway, 166 U. S. 83, 17 Sup. Ct. 488, 41 L. Ed. 925, were questions of title to real estate where single judgments in the state courts, which would not be conclusive even there, were urged as authority in the United States courts, and by reason of their inconclusive character in the state courts were not regarded as binding by the United States courts. The latter case also involved the construction of a particular device, which could only conclude the very question before the court and regarding which the United States court found that the state court had not consistently followed any single line of construction.

Myrick v. Railroad Company, 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325, was a case of contract of carriage and expressly stated to be not a question of local law, but a matter of general law; and so Railroad Company v. Bank, 102 U. S. 14, 26 L. Ed. 61, involved a question of general commercial law; and Railroad Company v. Prentiss, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, a question of general jurisprudence. No single case has been brought to our attention where a definite, positive decision of the Supreme Court of the state upon the construction of any local statute, made prior to any contract obligations incurred with respect thereto, and prior to any contrary decision of the United States courts, has not been followed and observed as the law by the United States courts.

Stewart v. Baltimore & Ohio Railroad Company, 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537, and Dennick v. Pennsylvania Railroad Company, 103 U. S. 11, 26 L. Ed. 439, only hold that actions founded upon statutes similar to those in question in this action are transitory in their nature and can be prosecuted in other jurisdictions where the laws of such jurisdiction are not in conflict therewith or similar comity is observed.

In Stanley County v. Coler, supra, Mr. Justice McKenna, in delivering the opinion and referring to the case of Burgess v. Seligman, supra, says:

"The question was regarded as one of commercial law and general jurisprudence, and the right to exercise our own judgment was asserted. It was said that state decisions were to be followed when they had become a rule of property, and that, 'this is especially true with regard to the law of real estate and the construction of state Constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there have been no decisions of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued.'"

In Missouri, Kansas & Texas Ry. Co. v. McCann, 174 U. S. 580, 19 Sup. Ct. 755, 43 L. Ed. 1093, the Supreme Court said:

"But the elementary rule is that this court accepts the interpretation of the statute of a state affixed to it by the court of last resort thereof."

In New York, Lake Erie & Western Railroad v. Pennsylvania, 158 U. S. 431, 15 Sup. Ct. 896, 39 L. Ed. 1043, it is said that:

"A construction or meaning attributed to the terms of a state statute by the courts of such state will, of course, be adopted by this court when called upon to decide questions arising under such legislation."

In Lapp v. Ritter (C. C.) 88 Fed. 108, the court said:

"It is settled by the decisions of the Supreme Court of the United States that the construction placed by the highest judicial tribunal of the state upon a statutory or constitutional provision of the state is as binding and conclusive upon the courts of the United States as though the construction so given had been written into the statute by the Legislature itself."

In Green v. Neal, 6 Pet. 291, 8 L. Ed. 402, the Supreme Court said:

"But the case is very different where a question arises under a local law. The decision of this question, by the highest judicial tribunal of a state, should be considered as final by this court; not because the state tribunal, in such a case, has any power to bind this court; but because, in the language of the court, in the case of Shelby v. Guy, 11 Wheat. 361, 6 L. Ed. 495, 'a fixed and received construction by a state in its own courts, makes a part of the statute law.'"

And in Piqua Branch of the State Bank of Ohio v. Knoop, 16 How. 375, 14 L. Ed. 977, the same court said:

"The established construction of a statute of the state is received as a part of the statute."

Since, therefore, the statutes upon which the plaintiff in this action must rely to recover are purely local statutes and have been interpreted by the Supreme Court of this state as not applicable to nonresident aliens and conferring no right upon them, which decision has been adhered to without variation for the past 10 years and has become the settled law of the state, and is in conformity with prior decisions upon similar statutes, thus making the policy of the law in this state of the character declared in the Deni Case for a still longer period, and, in view of the foregoing United States authorities, as to the binding effect of decisions of the highest court of the state upon the courts of the United States with respect to the construction of local statutes, I am constrained to sustain the demurrer on the ground that the plaintiff, as a nonresident alien, has no right of action. It is unnecessary, interesting as it might be, and did time allow to express the views of this court with respect to the statutes aforesaid.

The demurrer is therefore sustained.