FULCO v. SCHUYLKILL STONE CO.

(Circuit Court, E. D. Pennsylvania. July 30, 1908.)

No. 47, October Term, 1907.

1. DEATH—ACTION FOR WRONGFUL DEATH—PENNSYLVANIA STATUTE—ACTION BY NONRESIDENT ALIEN.

Act Pa. April 15, 1851, § 19 (P. L. 674), as amended by Act April 26, 1855, § 1 (P. L. 309), giving a right of action for wrongful death to certain relatives of the deceased, as construed by the Supreme Court of the state, which construction is binding on the federal courts, does not give such right to nonresident aliens.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 37.

What law governs actions, see note to Burrell v. Fleming, 47 C. C. A. 606.]

2. TREATIES—CONSTRUCTION.

The treaty between Italy and the United States of February 26, 1871 (17 Stat. 845), which guarantees to the citizens of each country in the states and territories of the other the most constant protection and security for their persons and property as to which they are to enjoy the same rights and privileges as natives and the right to resort to the courts to maintain and defend their rights without other conditions or restrictions than are imposed on natives, does not give to a subject of the King of Italy, who has never been in the United States and has no property here, the right to maintain an action under a state statute which gives a right of action for wrongful death only to citizens or inhabitants of the state.

At Law. On demurrer to statement of claim.

Thomas Leaming, for demurrer.
Marcel A. Viti, for plaintiffs.

ARCHBALD, District Judge.* The plaintiffs are citizens and residents of Italy and the subject of its King, and bring suit for damages for the death of their son, who was killed, as they allege, by the negligence of the defendant company by whom he was employed. The accident by which he lost his life occurred in Pennsylvania, and suit is brought on the statutes of that state, giving a right of action to the parents of the deceased in such cases. Act April 15, 1851, § 19 (P. L. 674); Act April 26, 1855, § 1 (P. L. 309). It is contended by the defendants that the plaintiffs, being nonresident aliens, have no right to sue, and it is upon this that the demurrer proceeds. It was decided by the Supreme Court of Pennsylvania, in Deni v. Pennsylvania Railroad, 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676, and again in Maiorano v. Baltimore & Ohio R. R., 216 Pa. 402, 65 Atl. 1077, 116 Am. St. Rep. 778, that nonresident aliens are not entitled to the benefit of this legislation, not being within its purview, and have no standing in consequence to maintain an action founded upon it. The same construction is put upon similar statutes in other jurisdictions. Brannigan v. Union Gold Mining Co. (C. C.) 93 Fed. 164; McMillan v. Spider Lake Co., 115 Wis. 332, 91 N. W. 979, 60 L. R. A. 589, 95 Am. St. Rep. 947; Roberts v. Great Northern Railway (C. C.) 161 Fed. 239; Adams v. British Steamship Co., 2 Q. B.

*Specially assigned.

(1898) 430. Although the weight of the authority is the other way. Davidsson v. Hill, 2 K. B. (1901) 606; Mulhall v. Fallon, 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309; Alfson v. Bush, 182 N. Y. 396, 75 N E. 230, 108 Am. St. Rep. 815; Kelleyville Coal Co. v. Petraytis, 195 Ill. 215, 63 N. E. 94, 88 Am. St. Rep. 191; Romano v. Capitol State Brick Co., 125 Iowa, 591, 101 N. W. 437, 68 L. R. A. 132, 106 Am. St. Rep. 323; Railroad v. Naylor, 73 Ohio St. 115, 76 N. E. 505, 3 L. R. A. (N. S.) 473, 112 Am. St. Rep. 701; Renlund v. Commodore Mining Co., 89 Minn 41, 93 N. W. 1057, 99 Am. St. Rep. 534; Vetaloro v. Perkins (C. C.) 101 Fed. 393; Hirschkovitz v. Pennsylvania Railroad (C. C.) 138 Fed. 439; Baltimore & Ohio R. R. v. Baldwin, 144 Fed. 53, 75 C. C. A. 211. But the construction put upon the Pennsylvania statutes, by the courts of that state, is binding here, without regard to how the law may be elsewhere (Zeiger v. Pennsylvania Railroad [C. C.] 151 Fed. 348; Id. [C. C. A.] 158 Fed. 809), unless of course, it is found to be in contravention of the federal law.

It is contended as to this that the plaintiffs are protected by the existing treaty between the United States and Italy of February 26, 1871 (17 Stat. 845), which provides:

"Art. 3. The citizens of each of the high contracting parties shall receive, in the states and territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives, on their submitting themselves to the conditions imposed upon the natives."

"Art. 23. The citizens of either party shall have free access to the courts of justice, in order to maintain and defend their own rights, without any other conditions, restrictions, or taxes than such as are imposed upon the natives. They shall, therefore, be free to employ in defense of their rights, such advocates, solicitors, notaries, agents and factors as they judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals in all cases which may concern them, and likewise at the taking of all examinations and evidences which may be exhibited in the said trials."

There was no reference to this treaty in the Deni or the Zeiger Case; although there was in the Maiorano, where it was decided to have no effect; the court holding that, while the treaty may in terms include the entire citizenship of Italy, it obviously is available only to those who, either with respect to their persons or property, are within the jurisdiction of the United States. This is a federal question, and the decision of the state court is not controlling; but upon an independent consideration of it, the same conclusion is to be reached.

The rights guaranteed to the citizens of Italy by the one article (3) are constant protection and security for their persons and property, as to which they are to enjoy the same rights and privileges as are or shall be guaranteed to natives. The other article (23) merely preserves the right to resort to the courts to maintain and defend their rights, without other conditions or restrictions than are imposed on natives. But in so guaranteeing protection and security to the persons and property of citizens of Italy, it is manifest that this can only refer to the persons and property of such citizens when within the states and territories of this country. There certainly is no in-

tended guaranty of their persons elsewhere, and neither is there of their property. What property or right of property, then, under the laws of Pennsylvania, do the plaintiffs show which is not accorded them? Certainly they had none in the person or the earnings of their son, for whose death they sue; it not being alleged that he was a minor—if that makes any difference—but merely that he contributed to their support. The continued expectation of this, no doubt, may measure the loss sustained by the parents by the death of a child, but in no sense is it property, North Penn Railroad v. Robinson, 44 Pa. 175, to the contrary, notwithstanding. Moe v. Smiley, 125 Pa. 136, 141, 17 Atl. 228, 3 L. R. A. 341. Nor, apart from the statute, did the defendant company owe the plaintiffs any duty to see that their son had a reasonably safe place to work in, the lack of which is the negligence charged, however much they may have owed it to the son himself; this action not being for the enforcement of any obligation to the party killed, which has been transmitted to his parents, through him, but for a distinct cause of their own, if they have any. The whole contention then is brought down to this: That, a right of action being given by the laws of Pennsylvania to its own citizens, under similar circumstances citizens of Italy are entitled to the same, regardless of anything else, because the treaty guarantees the same rights and privileges, as to their persons and property, as are enjoyed by natives. The treaty, in other words, is invoked to raise, or force a right, where none exists without it; but that is not the way it reads. A right existing, it provides that it shall be respected in the same manner and to the same extent in the case of a native of Italy as of a native of this country. It by no means undertakes to put them both in all respects and under all conditions, on an absolute par, to which the doctrine contended for necessarily leads. The state of Pennsylvania, had it so chosen, was at perfect liberty to provide in so many words, in favor of its own citizens only, that in case of death by negligence a right of action should accrue to certain specified relatives, declining to extend it to residents of other countries; but, by the construction put upon the statute by the Supreme Court of the state, that in effect is just what has been done, it being the same as though this proviso was written into it, which the treaty cannot be made to override. It was for the state, in other words, to give or to withhold the right, as well as to define the extent of it and the parties who were to be benefited, and, having withheld it in such a case as we have here, that is the end of the matter.

There are authorities, no doubt, which hold otherwise as to the effect of such a treaty (Railroad v. Naylor, 73 Ohio St. 115, 76 N. E. 505, 3 L. R. A. [N. S.] 473, 112 Am. St. Rep. 701; Bahuaud v. Bize [C. C.] 105 Fed. 485; and possibly New Orleans v. Abbagnato, 62 Fed. 240, 10 C. C. A. 361, 26 L. R. A. 329). But not, as it seems to me, with reason.

Judgment is therefore directed to be entered on the demurrer in favor of the defendants, with costs.