FULCO et al. v. SCHUYLKILL STONE CO.†

(Circuit Court of Appeals, Third Circuit.  March 15, 1909.)

No. 47.

1. TREATIES (§ 8*)—ITALIAN TREATY—CONSTRUCTION.

Italian Treaty 1871 (17 Stat. 846) art. 3, provides that the citizens of each of the contracting parties shall receive, in the states and territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives, on their submitting themselves to the conditions imposed on the natives, and article 23 (page 856) declares that the citizens of each party shall have every access to the courts in order to maintain and defend their own rights without any other conditions, restrictions, or taxes than such as are imposed on the natives, etc. *Held*, that such sections do not create in Italian subjects not resident in the United States any new or substantial rights of person or property to be enforced in the United States; their purpose, so far as they concern rights of person or property of nonresident Italians, being limited to the prevention of invidious discriminations in favor of citizens of the United States and against subjects of Italy, with respect to the enjoyment or enforcement in the United States of privileges and rights of person and property, arising and existing wholly independently of such provisions.

[Ed. Note.—For other cases, see Treaties, Dec. Dig. § 8.*]

2. COURTS (§ 366*)—FEDERAL COURTS—RULES OF DECISION—DECISIONS OF HIGHEST STATE COURT.

Whether a nonresident alien may recover for wrongful death of an alien resident in Pennsylvania depends on the statutes of that state, aside from the Italian treaty, as to which the federal courts sitting in Pennsylvania are bound by the decisions of the Pennsylvania Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see note to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

3. DEATH (§ 31*)—RIGHT TO SUE—NONRESIDENT ALIEN.

A nonresident alien is not entitled to the benefit of Act Pa. April 15, 1851 (P. L. 674), §§ 18, 19, nor Act April 26, 1855 (P. L. 309) § 1, giving a right of action to members of the family of a person whose death has been caused by the wrongful act of another.

[Ed. Note.—For other cases, see Death, Dec. Dig. § 31.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 163 Fed. 124.

M. A. Vite, for plaintiffs in error.

Thomas Leaming, for defendant in error.

Before GRAY, Circuit Judge, and BRADFORD and LANNING, District Judges.

BRADFORD, District Judge.  This writ of error was taken for the reversal of a judgment in favor of the defendant in the circuit court of the United States for the eastern district of Pennsylvania, in an action of trespass brought by Francesco Fulco and Nicola Fulco,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† See, to same effect, Majorano v. Baltimore & Ohio R. Co., 213 U. S. 268, 29 Sup. Ct. 424, 53 L. Ed. —.

subjects of Italy, against the Schuylkill Stone Company, a corporation of Pennsylvania, for the recovery of damages for the death of Vincenzo Fulco, their son, while employed at work in a stone quarry operated by the defendant in Montgomery County in that state through its alleged negligence. The judgment was rendered on demurrer to the declaration or statement of claim. It is therein stated that "the plaintiffs are aliens, residents of Nicosia, in the Province of Catania, Italy, and subjects of the King of Italy," and it is further alleged that "under and by reason of certain treaties made and existing between His Majesty, the King of Italy, and the United States of America, they are entitled to recover their loss and damage by reason of the death of their son, as is provided by law in the state of Pennsylvania for natives and citizens of this state and of the United States." It does not appear that either of the plaintiffs was at the time of the death of their son or at any time since has been in or a resident of the United States; and the argument of the case proceeded on the assumption that both plaintiffs were and continuously have been aliens and non-residents so far as this country is concerned. It does not appear from the statement of claim that Vincenzo Fulco, the son, was a minor at the time of the injury causing his death, and in the absence of an allegation to that effect it cannot be assumed that he was.

Section 18 of the Pennsylvania Act of April 15, 1851 (P. L. 674), provides:

"No action hereafter brought to recover damages for injuries to the person by negligence or default shall abate by reason of the death of the plaintiff; but the personal representatives of the deceased may be substituted as plaintiff, and prosecute the suit to final judgment and satisfaction."

Section 19 of the same act, among other things, provides:

"Whenever death shall be occasioned by unlawful violence or negligence and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus caused."

Section 1 of the Pennsylvania Act of April 26, 1855 (P. L. 309), provides:

"The persons entitled to recover damages for any injury causing death, shall be the husband, widow, children or parents of the deceased, and no other relatives, and the sum recovered shall go to them in the proportion they would have taken his or her estate in case of intestacy and that without liability to creditors."

Actions in Pennsylvania to recover damages for injuries resulting in death, aside from the existing treaty of commerce and navigation between the United States and Italy, signed, ratified and proclaimed in 1871 (Act Feb. 26, 1871, 17 Stat. 845) are governed by the above quoted provisions. The treaty contains, among other things, the following provisions:

"Article III. The citizens of each of the high contracting parties shall receive, in the states and territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives on their submitting themselves to the conditions imposed upon the natives. * * *"

"Article XXIII. The citizens of either party shall have free access to the courts of justice, in order to maintain and defend their own rights, without any other conditions, restrictions, or taxes than such as are imposed upon the natives. They shall therefore be free to employ, in defence of their rights, such advocates, solicitors, notaries, agents and factors, as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals in all cases which may concern them, and likewise at the taking of all examinations and evidences which may be exhibited in the said trials."

The foregoing articles are the only provisions of the treaty necessary for our consideration; for it is admitted on both sides, and we think properly, that if the right of action claimed by the plaintiffs exists by virtue of the treaty it must be derived from one or both of these two articles. But they nowhere create or undertake to create in subjects of Italy, not resident in the United States, new and substantial rights of person or property to be enforced in this country. So far as they concern rights of person or property of non-resident Italians their purpose plainly is limited to the prevention of invidious discriminations in favor of citizens of the United States and against subjects of Italy with respect to the enjoyment and enforcement in the United States of privileges and rights of person and property, arising and existing wholly independently of those provisions. Their essential nature so far as they relate to privileges and rights of person and property is anti-discriminative,—not creative; article III providing, in substance, that the citizens or subjects of each of the two countries should receive in the other protection and security "for their persons and property," and should "enjoy in this respect the same rights and privileges" as those of "the natives, on their submitting themselves to the conditions imposed upon the natives," and article XXIII providing, in substance, that the citizens or subjects of either party should have free access to the courts of justice "in order to maintain and defend their own rights, without any other conditions, restrictions, or taxes than such as are imposed upon the natives." Both articles are predicated on the existence of privileges, rights or property on the part of the alien not created by or derived from those provisions, but constituting the subject-matter which it was their purpose to protect and enforce. It is evident, therefore, that unless the plaintiffs, as non-resident aliens, are, under the statutes of Pennsylvania, and aside from the treaty, clothed with a right to recover damages resulting from the death of Vincenzo Fulco the judgment below must be affirmed. Whatever might be the views of the court on this point were it res integra, we feel bound by the decisions of the Supreme Court of Pennsylvania on the proper construction and effect of local statutes of that state to hold that no such right is vested in the plaintiffs. Deni v. Penna. R. Co., 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676; Maiorano v. Baltimore & O. R. Co., 216 Pa. 402, 65 Atl. 1077, 116 Am. St. Rep. 778; Zeiger v. Pennsylvania R. Co., 158 Fed. 809, 86 C. C. A. 69; Zeiger v. Pennsylvania R. Co. (C. C.) 151 Fed. 348. The judgment below must be affirmed, with costs, and it is accordingly so ordered.