DEBITULIA v. LEHIGH & WILKESBARRE COAL CO.

(Circuit Court, E. D. Pennsylvania. December 10, 1909.)

No. 51.

**1. COURTS (§ 366*)—FEDERAL COURTS—RULES OF DECISION—STATUTES.**

In the construction of a state statute, the federal court is governed by the construction of similar statutes in pari materia by the highest courts of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see note to Kansas City, Ft. S. & M. R. Co. v. Morgan,. 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

**2. DEATH (§ 31*)—RIGHT TO SUE—NONRESIDENT—"WIDOW."**

Act Pa. 1891 (P. L. 207), providing for the health and safety of persons employed in and about anthracite mines, in article 17, § 8, declares that for any injury to person or property occasioned by any failure to comply with the act by any owner of any coal mine, etc., a right of action shall accrue to the person injured; and, in case of loss of life, a right of action shall accrue to the "widow" and lineal heirs of the decedent for like recovery for damages for the injury they shall have sustained. Held, that the word "widow" construed in connection with Act April 15, 1851 (P. L. 674), and Act April 26, 1855 (P. L. 309), giving a right of action to a "widow" for the wrongful death of her husband, did not include a nonresident alien widow, and hence such widow who was an Italian subject and had resided in Italy since before July 11, 1907, was not entitled to recover under the Act of 1891 for the negligent death of her husband in a coal mine in Pennsylvania, notwithstanding such a right might be enforced under the laws of Italy.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 37; Dec. Dig. § 31.*

For other definitions, see Words and Phrases, vol. 8, pp. 7457–7459.

State laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

Action by Merchese Angela Debitulia against the Lehigh & Wilkesbarre Coal Company. On demurrer to plaintiff's amended statement. Sustained.

Marcel A. Viti, for plaintiff.
Dickson, Beitler & McCouch, for defendant.

J. B. McPHERSON, District Judge. The plaintiff is an Italian subject and has resided in that kingdom since before July 11, 1907. She

brings this action to recover damages for the death of her husband, who lost his life on the date just mentioned by the alleged negligence of the defendant. He was a laborer employed in an anthracite coal mine operated in the state of Pennsylvania, and the negligence of the defendant is said to consist in certain acts and omissions to which a detailed reference need not be made. Her statement of claim contains two counts; one of them is put upon the Acts of 1851 (P. L. 674) and of 1855 (P. L. 309), and the other count is put upon article 17, § 8, of the Act of 1891 (P. L. 207). It is conceded that the Acts of 1851 and 1855 give her no right of action. These statutes have been thus construed by the Supreme Court of Pennsylvania in Deni v. Railroad Co., 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676, and this construction was followed in Maiorano v. Railroad Co., 216 Pa. 402, 65 Atl. 1077, 21 L. R. A. (N. S.) 271, 116 Am. St. Rep. 778. The latter case also decided that the treaty between the United States and Italy did not give to an Italian subject residing in that kingdom a right of action under the foregoing Pennsylvania statutes, so far as they permit the recovery of damages for the death of a husband; and this construction of the treaty was affirmed by the Supreme Court of the United States. 213 U. S. 268, 29 Sup. Ct. 424, 53 L. Ed. 801. The cases of Deni and of Maiorano have been followed in the federal courts of this circuit; first, by Judge Ewing in the Western district of Pennsylvania (Zeiger v. Railroad Co. [C. C.] 151 Fed. 318), whose ruling was affirmed by the Court of Appeals in 158 Fed. 809, 86 C. C. A. 69, and afterwards by Judge Archbald, sitting in the Eastern district of Pennsylvania (Fulco v. Stone Co. [C. C.] 163 Fed. 124), whose opinion collects numerous cases on the general subject. This decision was also affirmed by the Court of Appeals (169 Fed. 98) on the well-known ground that the decisions of the Supreme Court of Pennsylvania construing the Acts of 1851 and 1855 bound the federal courts sitting within the state. I am not sure whether the force of the Pennsylvania decisions is thought to be affected by the averments in the plaintiff's amended statement "that under the law of Italy the nonresident alien widow and children of an alien killed in Italy through negligence are permitted to recover for their loss and damage resulting from said death"; but if this position is insisted upon I am not able to uphold it. Deni's Case was decided upon the ground that the scope of the two Pennsylvania statutes was not broad enough to include a nonresident alien; and I do not see how the scope of the statutes can be enlarged by the fact that the legislation of Italy contains the permission referred to in the plaintiff's statement. The question decided was the meaning of the Pennsylvania statutes, and in my opinion this meaning could not possibly be affected by the contents of an Italian statute, earlier or later, upon the same subject.

As I understand the plaintiff's argument, her sole reliance is placed upon the Act of 1891, under which the second count of the statement is drawn. The statute is entitled:

"An act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania and for the protection and preservation of property connected therewith."

Article 17, which is devoted to "Penalties," provides in its eighth section as follows:

"That for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions by any owner, operator, superintendent, mine foreman or fire boss of any coal mine or colliery, a right of action shall accrue to the party injured against said owner or operator for any direct damages he may have sustained thereby; and in case of loss of life by reason of such neglect or failure aforesaid, a right of action shall accrue to the widow and lineal heirs of the person whose life shall be lost, for like recovery of damages for the injury they shall have sustained."

Assuming that the plaintiff's statement in its account of her husband's death sets forth as the cause some violation of the act or some failure to comply with its provisions, it remains to inquire whether the plaintiff, as a nonresident alien, has been given a right to sue by the language of the foregoing section. This question has not yet been passed upon by the Supreme Court of Pennsylvania, and the plaintiff is therefore entitled to have it considered and decided by a federal court. But, as the question involves the construction of a Pennsylvania statute, it is not only decorous, but I think it is imperative, that the circuit court should pay great deference to the decisions of the state tribunal that have construed similar language in a similar statute. Unquestionably the Acts of 1851, 1855, and 1891 are in pari materia. They all concern the subject of injury or death by wrongful act, and the fact that the Act of 1891 necessarily applies to a smaller class of wrongdoers—since the section under consideration only punishes the offending owner or operator of an anthracite coal mine or colliery, while the earlier statutes apply to wrongdoers generally—has no bearing upon the question whether the benefits of the Act of 1891 have been extended to a larger class than was embraced by the previous legislation. Or, to state the proposition differently, the later statute is not to be extended to a larger class unless the fair interpretation of its words leads to that conclusion. If its language is essentially the same as the language of the Acts of 1851 and 1855, I can see no escape from the decision that it must be construed according to the judgments already pronounced by the Pennsylvania court.

Section 18 of the Act of 1851 (P. L. 674) relates to cases where a person, who has been injured by negligence, himself brings suit, and afterwards dies. In such a situation, it is provided that his personal representatives may go on with the suit. This section was not involved in Deni's Case and need not now be considered. It is section 19 (page 674) that calls for examination, namely:

"That whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or, if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned."

The Act of 1855 (P. L. 309) modifies this section by declaring:

"The persons entitled to recover damages for any injury causing death shall be the husband, widow, children or parents of the deceased, and no other relative."

Reading these two acts together, the state of Pennsylvania has provided that if death shall be caused by wrongful act—unlawful violence

or negligence—the husband, widow, children, or parents of the deceased may recover damages for the death thus caused; and it is this provision that was construed by the Supreme Court of Pennsylvania in Deni's Case to be too narrow to include a nonresident alien mother of the deceased; and in Maiorano's Case was held to be too narrow to include a nonresident alien widow. Now, this provision of the earlier statutes is identical in effect with the provision in the Act of 1891, namely, if death shall be caused by a wrongful act—negligence or failure to obey the statute—the widow and lineal heirs of the deceased may recover damages for the death thus caused. The difference in the language employed by the three statutes is immaterial; so far as the present question is concerned, the meaning is precisely the same. In all the statutes the "widow" is spoken of without qualification; and if "widow" in the first two acts is to bear a restricted meaning, the same word in the third act can be no broader.

The very careful and thoroughly satisfactory brief of the plaintiff's counsel shows plainly that his attack upon the two Pennsylvania cases (especially upon the case of Deni) is not directly upon the judgment of the court, but is distinctly aimed at the reasoning by which the judgment is supported. He attacks the opinion, and endeavors to show that it rests in part upon a misapprehension of some of the cases that are cited to sustain it; and in part upon a ground that was mistakenly taken for granted, namely, the absence of a similar statute in Italy—this mistake having now been corrected by the averments of the plaintiff's statement. He dwells further upon the numerous decisions in which other courts have construed like statutes in other states, and have held them to include nonresident aliens; and he insists that the reasoning of these decisions should commend itself as more in accord with the purposes of the Act of 1891 and with considerations of humanity and of public policy. The argument for construing this statute so as to include the plaintiff among its beneficiaries would deserve careful consideration, if the question were open in this court. But it must be evident, I think, that I am to be controlled by the judgment of the Pennsylvania court, and not necessarily by its reasoning. If there were nothing before me except the bare judgment of that tribunal to the effect that the plaintiff in Deni's Case was given no right of action by the Act of 1851 or of 1855, I should be bound by the decision precisely as I am now bound, although the court has seen fit to give reasons for its ruling. I have neither the right nor the disposition to examine critically the structure of the court's syllogism. It is the judgment that binds me, and the judgment alone. When, therefore, I find a later statute upon the same subject that is framed in essentially the same language, it seems to me that I must follow the earlier judgment and give the statute the same construction.

In construing statutes in pari materia, it is an established rule that the words of a subsequent act are to be given the recognized meaning which they had in a former act, if nothing shall be presented to show a contrary intention, and therefore judicial decisions construing one of such acts form a sound rule of construction for the other. 26 Amer. & Eng. Enc. of Law (2d Ed.) p. 611, par. "g" (2). In Hersha v. Brenneman, 6 Serg. & R. (Pa.) 2, the Supreme Court of Pennsylvania had

occasion to construe section 22 of the Act of 1794 (3 Smith's Laws. p. 151). It had been taken from the third and fourth sections of the Act of 1764, and, indeed, it not only substantially followed those sections, but pursued them for the most part word for word. The Act of 1764 had received a particular construction in a decision that was rendered in 1788 and the Supreme Court said (speaking in 1820) that they were unwilling to depart from it—

"particularly as we are of opinion that the slight differences that exist between the sections alluded to do not in any respect affect the question before us. The difference of phraseology between the words 'heir at law' and 'oldest son' can have no effect; for those terms have evidently the same meaning."

And in Reiche v. Smythe, 13 Wall. 162, 20 L. Ed. 566, it was held that, where Congress had evidently given a special meaning to a particular word or phrase in a statute, the Supreme Court would put the same interpretation on the same word or phrase, when it was used in a later statute upon the same subject. The facts were these: In 1861 Congress exempted from duty "animals living, of all kinds; birds, singing and other; and land and water fowls." Act March 2, 1861, c. 68, 12 Stat. 193. In 1866 it imposed a duty upon "horses, mules, cattle, sheep, hogs and other live animals imported from foreign countries." Act May 16, 1866, c. 82, 14 Stat. 48. Afterwards Reiche imported certain live birds, and the Circuit Court sustained the New York collector in charging them with duty under the later statute. But the Supreme Court reversed the judgment, holding that when Congress said "animals living of all kinds" in the Act of 1861, it adopted the popular meaning of the word "animals," and applied it to quadrupeds only, placing birds and fowls in a different classification. The court continued:

"Congress having therefore defined the word in one act so as to limit its application, how can it be contended that the definition shall be enlarged in the next act on the same subject, when there is no language used indicating an intention to produce such a result? Both acts are in pari materia, and it will be presumed that, if the same word be used in both, and a special meaning were given it in the first act, it was intended it should receive the same interpretation in the latter act, in the absence of. anything to show a contrary intention."

Accordingly it was held that the Act of 1866 when it spoke of "animals" also meant quadrupeds, and intended to impose a duty upon domestic quadrupeds, leaving the Act of 1861 to apply as before to all other quadrupeds, and also to birds and fowls.

As it seems to me, the present question is closely analogous to the problem that was presented in Reiche v. Smythe. It will be observed that Congress had not expressly defined the meaning of the phrase "living animals" in the Act of 1861; the Supreme Court discovered the meaning for itself, and decided that the phrase had been employed with a particular signification. Having decided what that signification was, the court applied it to the same language ("live animals") in the later statute, because the two acts were dealing with the same subject. In the case now under consideration the Supreme Court of Pennsylvania has decided—for this is the essence of their decisions—that neither of the words "parent" and "widow," as they are used in

the Acts of 1851 and 1855, means a nonresident alien parent or widow, the subject-matter being the right of a parent or a widow to recover damages for injuries resulting in death to a son or a husband. When, therefore, the Legislature had occasion to deal again with the same subject in the Act of 1891, and spoke again of the "widow," the conclusion seems to be irresistible that a similarly restricted meaning must be borne by the language of the later statute.

It is not necessary to pass upon the defendant's further objection that, even if the suit be maintainable at all, it has been improperly brought in the name of the widow alone. The statement of claim shows that there are two children, and it is objected that they should have been joined as plaintiffs, because the Act of 1891 apparently gives the right of action to the "widow and lineal heirs." If, however, I am right in the view that has already been expressed, this objection need not be considered.

In other respects the demurrer as amended is sustained, and judgment thereon may be entered in favor of the defendant.

Note.—Since the foregoing opinion was filed, the decision of the Court of Appeals of the Ninth circuit in Saveljich v. Lytle, etc., Co., has been reported. 173 Fed. 277. In that case the Court of Appeals follows the Supreme Court of Washington in construing the statute of that state to give a right of action to the nonresident alien widow and children of a person whose death has been caused by the wrongful act of another. The decision with its accompanying note contains a full, and probably a complete, collection of the conflicting authorities upon this subject.